## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ROGER WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:15-cv-02141-AKK** |
| **BEAULIEU GROUP, L.L.C.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Roger White alleges claims for discrimination and retaliation against his former employer under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623(a)(1) ("ADEA"), and the Americans with Disabilities Act, as amended in 2008, Pub. L. No. 110-325, 122 Stat. 3553 ("ADAAA"). The court has for consideration Beaulieu Group, L.L.C.'s motion for summary judgment, doc. 37, which is fully briefed, docs. 38; 42; and 45, and ripe for review. For the reasons stated herein, the motion is due to be granted as to the age and disability discrimination claims (Counts I and II), and denied, in part, as to the retaliation claim (Count III).

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of

events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL BACKGROUND[1]

White, who was over age forty at all times relevant to this lawsuit, worked for Beaulieu Group for approximately two decades. He last worked as an Accumulator Technician in the Weaving Department of the Specialty Fabrics plant. Doc. 43-1 at 1. White's duties consisted of "maintaining and repairing accumulators, creel racks, comb holders, eyelets, weft brake systems, feeder grippers, left end grippers, sheers, control boxes, electrical systems, and circuit boards used in [Beaulieu Group's] weaving process." *Id.*

---

[1] White's motion to strike the declarations of Jeremy Bradford, Dale Peacock, Bradford K. Holden, and Danny Curtis due to the failure to include these individuals in initial disclosures, doc. 41, is **DENIED**. As Beaulieu Group notes, White became aware of these declarants during discovery, s*ee* doc. 46 at 6 (citing docs. 39-7 at 49, 56, 78; 39-5 at 9; 39-4 at 17, 23, 52; 39-7 at 88), and "a party is under no duty to formally supplement its initial disclosures with information that has otherwise been made known to the opposing party in discovery." *Brown v. Chertoff*, No. 4:06-cv-002, 2009 WL 50163, at *4–5 (S.D. Ga. Jan. 7, 2009), *aff'd*, 380 F. App'x 832 (11th Cir. 2010).

In October 2014, White's immediate supervisor, Ignaz Ackermann, informed White of Beaulieu Group's decision to create two new positions, entitled "Auxiliary Technician," by combining White's Accumulator Technician position with two Lubrication Technician positions. *Id.* at 3. Beaulieu Group "had replaced outdated accumulator equipment," which meant that "it was no longer necessary for two employees [*i.e.*, Lubrication Technicians] to perform oil changes, maintain, and repair the accumulator on a full-time basis." Doc. 43-8 at 2. In light of the change, Ackermann informed White that, to continue his employment, he had to successfully apply for one of the new Auxiliary Technician positions.

White did not understand why he needed to apply for "a position [he] had been performing for 18 years," and asked Dennis Mason "why they were combining the positions." *Id.* Mason purportedly replied that Beaulieu Group was "cutting back the fat and getting rid of old hands," *see* doc. 39-4 at 58, which White interpreted to mean "[p]eople that [had] been at [the company] any length of time." *See* doc. 39-4 at 18. Concerned, White emailed Human Resources Manager Lamar Clark, stating, "[I] really don't understand this concept because of my long term employment [here] and I already currently do this job." Doc. 39-12 at 2.

Despite his disagreement with the decision, White applied for the new Auxiliary Technician positions and received an interview. Doc. 43-1 at 4. The

Hiring Committee — comprised of Mason, Phillip Cooper (the Slit Film Department Manager), William Cronnon (the Spinning Manager), and Carlos Fraire (a member of "Employee Development") — asked White "what stressed [him]," "what motivated [him]," and "whether [he] [would be] able to do the job." *Id.*[2] White believes these questions were directed at his chronic depression, doc. 43-1 at 4–5, and maintains that the questions also evidence bias against him for being obese, because Cronnon "look[ed] [White] up and down" while inquiring about White's ability to perform the job, *see* doc. 39-4 at 15.

In response to the questions, White stated that he "had been performing the job for 18 years and . . . there was no reason why [he] could not continue performing it." Doc. 43-1 at 4. As to what "stress[ed] him," White responded that, "with [his] depression, [he] [is] always somewhat stressed, but that it [had] not been a problem with [his] medication." *Id.* at 5. When asked if he believed two employees could perform the Auxiliary Technician job, White replied "not every day two people could not do [the job]." Doc. 39-4 at 22.

After the interview, White called his wife immediately and relayed that the interview went poorly. *See* doc. 39-4 at 47 ("Q: So you called your wife and told her that the interview did not go good; is that right?"; A: Yes."). The call caused

---

[2] Cronnon testified that the Committee asked each candidate these questions, *see* doc. 39-15 at 10, and White has no evidence to rebut this assertion, *see* doc. 39-4 at 16.

White's wife to email Lamar Clark to plead for White's job. Doc. 39-36 at 2.[3] White's fears were confirmed a few days later when Beaulieu Group informed him that he was not one of the successful candidates. Doc. 43-1 at 5. Beaulieu Group also rejected the application of Jack Windsor, a 53-year old Lubrication Technician "with over sixteen (16) years of experience," and selected instead Josh Keef, age 35, and Brandon Blevins, age 24. Doc. 42 at 8. According to White, "Keef had less than three (3) years of experience as a Lubrication Technician and only a limited amount of training on Accumulator Technician duties that he received from White," and "Blevins had no prior work experience as either a Lubrication Technician or an Accumulator Technician." *Id.*

The reduction in force and White's unsuccessful application for one of the two new positions resulted in his discharge. As a result, White filed a charge with the Equal Employment Opportunity Commission alleging age and disability discrimination. *See* doc. 16-1 at 2. White subsequently amended his charge to add claims for retaliation based on his unsuccessful attempts to obtain other positions. *See* docs. 16-3; 39-4 at 14.

---

[3] In the email, Kathy White stated:

Hey there this is Kathy Roger[']s wife he asked me to email you in regards to his interview today. He said Ignaz [Ackermann] wasn't in the interview and he was really upset when he called said it didn't go good. Can u please call me or advise what he needs to do. We can't afford him to lose his job. Thanks in advance for your help.

Doc. 39-36 at 2.

# III.  ANALYSIS

The court examines each of White's claims separately below, beginning with age discrimination, followed by the disability discrimination in Part B, and finally, in Part C, the retaliation claim.

## A. Age Discrimination (Count I)

White contends that Beaulieu Group engaged in age discrimination when it hired two individuals below the age of forty instead of White for the Auxiliary Technician positions. Doc. 42 at 14–15.  The ADEA makes it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Where, as here, White is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof.  *See Horn v. UPS*, 433 F. App'x 788, 792 (11th Cir. 2011) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000)) ("[W]e apply the burden-shifting framework establish in [*McDonnell Douglas*] to analyze ADEA claims based on circumstantial evidence of discrimination.").

Under this method, White must first establish a *prima facie* case.  *See Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998).  If White satisfies his initial burden, then Beaulieu Group must show a legitimate, non-discriminatory

reason for its employment action.  *See id.* at 1184.  If Beaulieu Group does so, then White must prove that the proffered reason is a pretext for unlawful discrimination. *See Mulhall v. Advance Sec.*, 19 F.3d 586, 597 (11th Cir. 1994).  However, "[t]he ultimate burden of persuading the trier of fact that [Beaulieu Group] intentionally discriminated against [White] remains at all times with [White]."  *See Springer v. Convergys Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

1. Beaulieu Group proffers a legitimate, nondiscriminatory reason for failing to hire White.

Beaulieu Group concedes that White can establish a *prima facie* case.  Doc. 38 at 24 n.34.  Therefore, the next step in the *McDonnell Douglas* framework requires Beaulieu Group to articulate a legitimate, nondiscriminatory reason.  *See Walker*, 158 F.3d at 1183.  Beaulieu Group has met its burden through its contentions that White exhibited a negative attitude by his displeasure over needing to reapply for "his" job and that White verbalized doubts, during the interview, as to whether two people could complete all of the daily responsibilities called for by the job description.  Docs. 38 at 25; 39-15 at 11; 39-16 at 23.  White does not dispute that he made these statements.[4]  Therefore, because "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the

---

[4] *See, e.g.*, doc. 39-4 at 16 (White's testimony that he asked Mason why he needed to "reapply for [his] job"), and 22 (White's testimony that he believed that he doubted that two people could do the job, because "[t]here [are] some days you'd have more accumulators and you couldn't get to the oil and greasing and vice versa").

defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion," *Chapman*, 229 F.3d at 1034, and Beaulieu Group has identified specific examples for why it maintains White exhibited a negative attitude,[5] Beaulieu Group has met its burden of articulating a legitimate, nondiscriminatory reason.

2. <u>White cannot show that Beaulieu Group's proffered legitimate, nondiscriminatory reason is mere pretext for age discrimination</u>.

Consequently, the burden shifts to White to prove pretext. *See Mulhall*, 19 F.3d at 597. As evidence of pretext, White asserts, in part, that Beaulieu Group did not need to eliminate his position because "the Accumulator Technician position duties did not disappear because of new equipment, as [Beaulieu Group] disingenuously alleges." Doc. 42 at 18. The court is confounded by this contention because, even if White is correct that Beaulieu Group could have maintained the *status quo*, this court has no standing to challenge an employer's business decisions regarding its staffing. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010) ("We do not sit as a 'super-personnel department,' and it is not our role to second-guess the wisdom of an employer's business decisions — indeed the wisdom of them is irrelevant — as long as those

---

[5] Beaulieu Group identifies White's statements before the interview about needing to apply for "his" job and White's statements during the interview that he "didn't think two people could do the job of auxiliary technician," at least "[n]ot every day." Doc. 39-4 at 25. *See also Chapman*, 229 F.3d at 1036 (poor interview performance may be a legitimate, nondiscriminatory reason for failure to hire when "backed up by clear and reasonably specific bases").

decisions were not made with a discriminatory motive."). Moreover, White conceded that automation had eliminated the need for at least some of the work he performed as an Accumulator Technician, and that Beaulieu Group had, in fact, combined three former positions to create two new positions. *See* doc. 39-4 at 25, 32–33. This evidence belies White's contention that the job consolidation was mere pretext for discrimination.

As his next contention of pretext, White attacks the assessment that he displayed a negative attitude by noting that Beaulieu Group failed to hire then-53-year-old Jack Windsor for the Auxiliary Technician position, even though Carlos Fraire's handwritten notes from the interviews, doc. 39-18, indicate that Windsor, like the selected individuals, had also exhibited a "positive attitude." Doc. 42 at 18. This contention is also unavailing, in part, because that the Hiring Committee described the two successful candidates and the older candidate as having positive attitudes indicates that this trait was, in fact, one that mattered to Beaulieu Group. Moreover, to show pretext, White must do more than point out that the Committee selected the two younger candidates instead of White or Windsor. Rather, White must tackle Beaulieu Group's articulated reason "head on," *see Wilson v. B/E Aero, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004), and demonstrate that the Hiring Committee's reason for not selecting him was "false," *see St. Mary's Honor Ctr. v.*

*Hicks*, 509 U.S. 502, 515 (1993).  White failed to do so, and, in fact, concedes the points Beaulieu Group articulated as proof of his negative attitude.

Ultimately, interviews generally matter, and employers have the right to use interviews to assess candidates.  *See Chapman*, 229 F.3d at 1034.  Indeed, even White recognizes this point, because he expressed concern to his wife after what he perceived as his poor interview.  *See* docs. 39-4 at 47; 39-36 at 2.   While White may believe that it was unreasonable for the Hiring Committee to interpret his comments during the interview or about the restructuring as "negative," *see, e.g.*, doc. 43-1 at 5, courts "do not review the wisdom or general fairness of [the employer's] decisions about who would be a better employee for the [position]." *Grovner v. Ga. Dep't of Natural Res.*, 646 F. App'x 805, 811 (11th Cir. 2016). This directive to not second-guess business decisions is even more relevant where, as here, Beaulieu Group directs the court to the reasons for its concern — *i.e.*, immediately after it announced its decision to consolidate, White expressed his displeasure, stating, among other things, that he did not understand why he had to interview for "his" job, *see* doc. 39-4 at 16, and, later, when the Hiring Committee asked whether he thought two people could perform the job, he responded "not every day two people could not do it," doc. 39-4 at 22.  These statements suggest that White disagreed with the business rationale behind the consolidation, and are

sufficient to support Beaulieu Group's contention that White displayed a negative attitude.

In the final analysis, even if the Committee was mistaken about White's attitude, "no matter how mistaken [a] firm's managers, the ADEA does not interfere." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, "[a]s long as the employer's beliefs were honest, they can be mistaken without it implying that the employer acted with a discriminatory motive." *Newman v. Career Consultants, Inc.*, 470 F. Supp. 2d 1333, 1346 (M.D. Ala. 2007).[6]   Therefore, in light of White's failure to rebut the legitimate, nondiscriminatory reasons for eliminating his former position and/or failing to hire him as an Auxiliary Technician, Beaulieu Group's motion is due to be granted as to the age discrimination claim.

## B. Disability Discrimination (Count II)

White contends next that Beaulieu Group failed to hire and/or discharged him due to his obesity and depression.  Doc. 1 at 8–9.  White has failed to show

---

[6] Also, to briefly address White's contention that the Hiring Committee improperly focused on the candidates' attitudes rather than their experience, *see* doc. 39-4 at 21 (Q: "What's wrong with hiring someone more positive?  Why is that discrimination?"; A:  "Well, if he's got no experience, I mean, that don't — how do they pick him just because he's positive?"), and 34 ("I really don't see what attitude would be if you're not able to do [the job].  If you don't have the experience to do it, how does it matter how positive you are?"), a federal court is not a "super-personnel department that reexamines an entity's business decisions." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013).  The court's "job is instead to determine whether the employer gave an honest explanation to justify its hiring decisions.  If the employer gives one, we're not in a position to second-guess [its] business judgment." *Id.*

that he has a substantially limiting impairment or that Beaulieu Group discriminated against him because of his alleged disability.

    1. <u>White cannot show that his depression constitutes a "disability" for purposes of the ADAAA</u>.

To establish a "disability," White must show "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . .; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). White cannot show that his depression substantially limited him, because he testified that it was controlled by medication, doc. 39-4 at 5, and that he informed the Hiring Committee that it "ha[d] not been a problem with [his] medication," doc. 43-1 at 5. "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482–83 (1999).

White's "record of" or "regarded as" claims also fail. *See* doc. 42 at 15 (stating in a conclusory manner that he also "asserts 'record of' and 'perceived as' claims"). To support these claims, White claims that, in August and October 2014, Ackermann asked him about his depression and for a list of his medications, and commented that medications "affect people differently" and that some of White's medications could affect White's ability to perform his job. Doc. 39-4 at 58. These contentions fail because, as an initial matter, Ackermann was not a member

of the Hiring Committee for the Auxiliary Technician position, and there is no evidence that he had any role in the selection decision. Moreover, to establish disability under the "record of" or "perceived as" theories, White must show that the employer regarded the impairment as "substantially limiting." *See Sutton v. Lader*, 185 F.3d 1203, 1208 (11th Cir. 1999); *Carr v. Publix Super Mkts., Inc.*, 170 F. App'x 57, 61 (11th Cir. 2006). White fails to allege or present evidence that Ackermann (or any other supervisor) believed White's depression was "substantially limiting." For all of these reasons, White's claim based on his depression fails.

2. White cannot show that Beaulieu Group subjected him to unlawful discrimination based on his obesity.

Assuming that White's obesity qualifies as a substantial impairment under the ADAAA,[7] his claim for this condition also fails. White's claim rests on his interpretation of an interview question: "[William] Cronnon's asking whether White was 'able' to do the job while eyeing White's weight, constitutes a violation of . . . the ADA . . . in addition to [Beaulieu Group's] own ADA accommodation

---

[7] "Whether obesity qualifies as an impairment under the ADA is undecided in this circuit." *Moore v. Chilton County Bd. of Educ.*, 1 F. Supp. 3d 1281, 1294 (M.D. Ala. 2014). However, because the ADAAA broadened the definition of disability under the ADA, *see* ADAAA, Pub. L. No. 110-325, 122 Stat. 3553, and removed the pre-ADAAA EEOC's regulation language that "except in rare circumstances, obesity is not considered a disabling impairment," 29 C.F.R. Pt. 1630, App. § 1630.2(j), some courts have held that "a plaintiff now might be considered disabled due to obesity under the ADA if [his] employer perceived [his] weight as an impairment." *Lowe v. American Eurocopeter, L.L.C.*, No. 1:10CV24-A-D, 2010 U.S. Dist. LEXIS 133343, at *7 (N.D. Miss. Dec. 16, 2010).

and EEO policies." Doc. 42 at 17. However, White fails to explain how Cronnon's purportedly "eyeing" his physique violates the ADA, and he does not direct the court to any authority supporting this contention.

The court is also not persuaded by White's reliance on *Smith v. Lockheed-Martin Corp.* to argue that he has presented a convincing mosaic of discrimination. 644 F.3d 1321, 1328 (11th Cir. 2011). According to White, the actions of Dennis Mason alone present a "convincing mosaic" of discrimination because Mason

> 1) had direct knowledge of White's disabilities; 2) had inquired to White's younger coworker, Josh Keef, as to whether White was doing his job and whether Keef could perform White's job just before the interview; 3) admitted that White could perform his duties with good performance; 4) told White that Defendant was "cutting back the fat and getting rid of old hands"; and 5) admitted that accumulators still needed routine, ongoing maintenance and repairs in conflict with Defendant's assertion that new equipment caused the Accumulator Technician position to be unnecessary.

Doc. 42 at 17–18. The court is not convinced because, as a threshold matter, Mason was only one member of the four-person Hiring Committee, and, absent evidence that the other Committee members harbored discriminatory animus, "[a]ny alleged bias on [one member's] part cannot be imputed to the entire interview panel." *Conner v. LaFarge N. Am., Inc.*, 343 F. App'x 537, 544 (11th Cir. 2009). Moreover, even accepting these facts as true, for the reasons stated below, they fall far short of presenting a "convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination" on the basis of White's obesity. *See Smith*, 644 F.3d at 1328 (citation omitted).

Taking White's contentions *seriatim*, first, Mason's knowledge of White's obesity alone does not give rise to an inference of discrimination. After all, liability would essentially be automatic if knowledge alone is sufficient to prove a claim. *See Biggs v. Florida State Bd. of Regents*, No. 1:96-cv-185-MMP, 1998 U.S. Dist. LEXIS 21273, at *21 (N.D. Fla. Oct. 28, 1998) ("Plaintiff has made much of her contention that [her supervisor] was aware of her bipolar condition, however, such knowledge, even if imputed to the Defendant, is insufficient alone to establish pretext."). Second, that Mason asked Keef before the interviews about White's performance or whether Keef could perform White's Accumulator Technician duties does not evidence animus based on White's obesity. At best, the inquiry evidences *personal* animus, rather than disability based animus.

Third, as for White's contention that Mason admitted White was a good performer, Beaulieu Group has never disputed White's ability to perform his former duties. Rather, it contends only that it did not select White for the Auxiliary Technician position due to his negative attitude regarding the consolidation and his poor interview. Fourth, as to the "cutting back the fat" reference, this is a common phrase referring to the elimination of unnecessary costs, and no reasonable person could find that this was a reference to White's

obesity, including White, who testified instead that the statement referenced an intent to sack workers with longer tenure. Doc. 39-4 at 18. Finally, although the company still had equipment that required maintenance, even White acknowledged the upgrade to at least twenty-five percent of the equipment meant that the company no longer required the type of maintenance White had performed. Doc. 39-4 at 32–33.

In light of White's failure to present any colorable evidence of disability discrimination (other than his subjective belief that one of his interviewers visually observed his obesity while inquiring about his ability to perform the job), or to credibly challenge the articulated reasons for the selection decision, Beaulieu Group's motion is due to be granted as to White's disability discrimination claim.

## C. Retaliation (Count III)

White contends also that Beaulieu Group retaliated against him for engaging in protected activity, because "they wouldn't hire [him] back and they wouldn't respond to [his] applications." Doc. 39-4 at 14.[8] Although White claims to have

---

[8] White also asserts, for the first time in his brief, a retaliation claim based on Beaulieu Group's "terminat[ion] [of] [his] employment on November 12, 2014 . . . ." Doc. 42 at 20. White did not include this as a basis for his retaliation claim in either the complaint, doc. 1, or in his EEOC charge, doc. 16-3 at 2, and "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment," *Gilmour v. Gates, McDonald & Co.*, 382 F.2d 1312, 1315 (11th Cir. 2004).

applied for over fifty positions following his discharge, the parties apparently agree that only seventeen of those positions are at issue here.[9]

To establish a *prima facie* case of retaliation, White must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal relation between the two events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quotations omitted). Beaulieu Group challenges only the last prong, contending that its "hiring managers were not even aware of [White's] EEOC charges and lawsuit and declined [White's] applications for legitimate, non-retaliatory reasons." Doc. 38 at 32. The record belies this contention as it relates to Naeem Khawaja, one of the hiring officials for some of the positions at issue. Specifically, on December 21, 2015, Elizabeth Kaulfuss ("Employee Development Business Partner II") sent an email to Irene Magana (Beaulieu Group's Technical Recruiter), wherein Kaulfuss responded to Magana's email about a "[p]otential candidate [*i.e.*, White]" as follows: "This gentleman advised he is in the process of a lawsuit with Beaulieu. Not sure why he reapplied, but let's take him off of the list of possibles." Doc. 43-

---

[9] White's brief does not dispute or otherwise address this point. *See* docs. 38 at 5; 42 at 19–21. The 17 positions are "9601-Electronic Technician," "10394-PM Technician," "10964-PM Technician," "10762-Tipper Tie Operator," "10827-Reclamation NGR Operators Level 2," "11469-Spinner Mechanic," "11488-Master Mechanic," "11584-Spinner Operator," "11691-Weaving Utility," "11712-Class A Mechanic," "11720-Creeler/Burnoff," "11730-Slit Film Operator," "11731-Slit Film Operator," "11732-Slit Film Operator," "9907-Tipper Tie Operator," "11795-Slit Film Operator," and "11775-Tipper Tie Operator." *See* doc. 39-22 at 2–3.

7 at 2.  Magana responded, "Naeem [Khwaja] had advised a while back and I should have remembered and not forwarded his resume.  I . . . will make sure I do not forward his information moving forward.  He applies all the time for basically any position at BP Fabrics I post on Indeed."  *Id.* at 1.

Based on this email and Khawja's admission that he knew about White's lawsuit against the company,[10] the court finds that a factual issue exists as to whether Khwaja, the hiring manager for listings 9907, 10762, 11775, 10394, 10964, and 11691, refused to consider White for these positions in retaliation for White's lawsuit.  *See* doc. 38 at 20.  Moreover, although the parties do not discuss listing 11976:  "Warp Service Person-B Shift," because White applied for this position after December 21, 2015, *see* doc. 39-22 at 2, and White presents evidence that Magana was involved in screening applicants, *see* doc. 39-28 at 19, White's retaliation claim also survives as to this listing.  However, the court cannot reach a similar decision for the other positions White applied for prior to this email, because there is no evidence that any of the other hiring managers knew about White's protected activity.[11]

---

[10] Khawaja testified that, as of December 17, 2015, he had heard "hearsay in the company, some employees talked about something, some charges, this and that," but Khwaja "didn't know anything specific of anything."  Doc. 39-6 at 30.

[11] Jeremy W. Bradford, hiring manager for listing 9601, stated that he first learned about White's EEOC charges and lawsuit in February 2017.  Doc. 39-30 at 4.  Phillip Cooper and Danny Curtis, hiring managers for listings 10827, 11712, 11730, 11731, 11732, and 11795, stated that they did not learn about White's EEOC charges until February and March 2017,

Accordingly, Beaulieu Group's motion is due to be denied as to the retaliation claim, but only as to the six listings for which Khwaja was the decisionmaker, and the sole listing for which White applied after Magana's statement that she would not "forward [White's] information moving forward."

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, Beaulieu Group's motion for summary judgment, doc. 37, is **GRANTED** as to the disability and age discrimination claims (Counts I and II), and **DENIED** as to the retaliation claim (Count III), but solely as to listings 9907, 10762, 11775, 10394, 10964, 11691, and 11976. Finally, Beaulieu Group's motion for hearing, doc. 48, is **DENIED**.

As set forth in the scheduling order, doc. 13, the court will hold a pretrial conference at 9:00 a.m. on June 7, 2017 at the Hugo Black Federal Courthouse in Birmingham, Alabama, and a jury trial at 9:00 a.m. on July 17, 2017 at the United States Courthouse in Huntsville, Alabama. The court directs the parties to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as **Exhibit A**.

---

respectively. Docs. 39-17 at 5; 39-33 at 4. Finally, Dale Peacock, hiring manager for listing 11720, stated that he did not learn of White's EEOC charge until March 2017. Doc. 39-31.

**DONE** the 23rd day of May, 2017.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE

## EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the United States Courthouse in Huntsville, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order inWordPerfect format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED<u>WITH</u> PREJUDICE.